# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENISE MORRISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CV-0334-JED-FHM |
| ) | |
| KEVIN COX, GRETCHEN MUDOGA, ) | |
| JOHN DOE, AND RICHARD DOE, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

The Court has for its consideration Defendants Kevin Cox's and Gretchen Mudoga's "Motion for Judgment" (Doc. 15), which seeks summary judgment under Federal Rule of Civil Procedure 56 as to plaintiff's civil rights action brought under 42 U.S.C. § 1983. Plaintiff's "Motion for Partial Summary Judgment as to Liability Only" (Doc. 20) is also before the Court. Plaintiff's motion argues that the City of Tulsa's nuisance abatement ordinance is unconstitutionally vague, which would render the defendants' nuisance abatement of plaintiff's property unlawful.

**I.  BACKGROUND**

This § 1983 action is brought by plaintiff, Denise Morrison, against employees of the City of Tulsa; namely, Kevin Cox, Gretchen Mudoga, and two fictitious defendants, John Doe and Richard Roe. Morrison's claim is relatively simple.[1]  She alleges that the defendants

---

[1] Defendants' motion for summary judgment addresses what defendants' perceive as two claims under § 1983: a Due Process claim and a Fourth Amendment claim. (Doc. 15). However, plaintiff repeatedly states in her motion for partial summary judgment that her complaint alleges only a § 1983 claim based upon an alleged violation of her Fourth Amendment rights by defendants. (*See* Doc. 20, at 8, 10, and 11). Hence, the Court will limit its summary judgment analysis to plaintiff's Fourth Amendment claim, the solitary claim plaintiff asserts.

violated her Fourth Amendment right to be free from an unlawful search and seizure by entering her property and removing certain plants and other materials deemed by the City to be a public nuisance.

Defendant, Gretchen Mudoga, was at all relevant times a neighborhood inspector for the City of Tulsa. Defendant, Kevin Cox, was Mudoga's supervisor. On July 11, 2011, the City received and memorialized a complaint regarding Morrison's property. Mudoga inspected the property on July 14, 2011, and found tall grass and vegetation in the front and back yards, an inoperable car, and varied debris.

On July 15, 2011, the City issued and mailed a notice to abate a nuisance, which directed Morrison as follows:

> Remove the trash, junk and debris, including but not limited to, miscellaneous trash and remove any unused or discarded items from the entire property. Entire lot must be mowed/cleaned/maintained, including the alley easements and right of ways and weed eating fence lines. All grass must be maintained at a height of less than 12 inches. All property lines must be mowed and cleaned to include the removal of vines, noxious growth and overgrowth. All inoperable vehicles must be removed from the entire property, made operable or stored within a fully enclosed structure, including but not limited to, green ford [sic] Escort OK TAG 003ZMK Exp. 7/2009 with two flat rear tires and filled with junk. Inoperable vehicles are subject to citations and/or being impounded.
>
> \*   \*   \*
>
> The property owner or his agent may appeal this notice to abate a nuisance within 10 days of the mailing of the notice by filing in writing with the Code Official and the Nuisance Hearing Officer a notice of appeal stating the grounds thereof.

(Doc. 15-3). The notice was posted on Morrison's door and subsequently mailed to her. As stated above, the notice provided ten (10) days for Morrison to file a written appeal.[2] (*Id.*).

---

[2] Morrison was familiar with the appeal process. Indeed, she had previously received a notice to abate a nuisance and, on that occasion, had timely challenged the remediation fees which had been assessed against her at a separate property via an action before the City Council on June 9, 2011. (Doc. 15-6).

2

Morrison also had several conversations with defendants over the course of the next few weeks. On July 26, 2011, Morrison left a message for Mudoga stating that she wished to discuss the notice. The next day, Mudoga went to Morrison's property and observed no changes, except that a tarp had been placed over the inoperable vehicle. She posted a final notice on Morrison's door at that time. Later that day, Mudoga and Cox met with Morrison at City Hall at Morrison's request. They discussed the condition of the property and Mudoga again informed Morrison of her right to appeal the notice. On August 1, 2011, Mudoga again met with Morrison at her property. Consistent with the prior interactions between the parties, they were unable to reach an agreement about how to remediate the property. On August 8, 2011, Mudoga returned to the property and found no change in its condition. On that date, a final notice was then issued to Morrison stating that contractors would be given a work order to remediate the property on August 10, 2011. Morrison told Mudoga on August 10, 2011, that her property contained an organic garden and stated that she would be filing a police report and hiring an attorney.

Following her August 10, 2011 conversation with Morrison, Mudoga sought advice from Maureen Turner, the Chief Horticulturist for the City of Tulsa, regarding Morrison's claim that her property contained an organic garden. Turner is a certified arborist with a degree in horticulture, and has been employed by the City as a horticulturist since 2003. On August 12, 2011, Turner inspected the property and was of the opinion that several violations of the City ordinance were presented by Morrison's property. Turner shared her opinions with Mudoga, who then released the work order to remediate the property. On August 16, 2011, Mudoga, Cox, contractors, and two police officers went to Morrison's property and removed approximately 11

cubic yards of material from the property.[3] From July 15, 2011 – the date on which the City issued and mailed the notice – through August 16, 2011, no appeal was pursued in accordance with the ordinance.

On June 13, 2012, Morrison filed this litigation.

## II.    STANDARDS

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*,

---

[3] The inoperable car was not removed from Morrison's property at that time, but was later sold by her.

477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III. ANALYSIS

#### A. Plaintiff's Void-for-Vagueness Argument

Plaintiff's Motion for Partial Summary Judgment (Doc. 20) seeks judgment as to liability on the basis that the City of Tulsa's Municipal Ordinance, Title 24, § 101(B)(6), is unconstitutionally vague. Defendants counter that, because Morrison raises an "as-applied" vagueness challenge, she need only have been given "fair warning" that her conduct was prohibited – something defendants allege plaintiff was given on numerous occasions, both in person and in writing. (Doc. 25, at 4).

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "This doctrine serves not only to put the public on notice of what conduct is prohibited, but also to guard against arbitrary enforcement." *Dias v. City & County of Denver*, 567 F.3d 1169, 1179 (10th Cir. 2009) (citing *Kolender*, 461 U.S. at 358). Two types of void-for-vagueness challenges exist: facial and as-applied challenges.

The Tenth Circuit has noted that "[f]acial challenges are strong medicine." *Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005). This is because "passing on the validity of a law

5

wholesale may be efficient in the abstract, [but] any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks." *Sabri v. United States*, 541 U.S. 600, 608–09 (2004). Hence, the Tenth Circuit has held that facial challenges are only appropriate in two circumstances: "(1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment); or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application." *Dias*, 567 F.3d at 1179-80 (citing *United States v. Gaudreau*, 860 F.2d 357, 360–61 (10th Cir.1988)). Neither circumstance is presented in this case. The Court will therefore construe plaintiff's challenge to the City of Tulsa's relevant municipal ordinance as an as-applied challenge.

"Whether a court is analyzing a statute as void for vagueness on its face or as applied, the essence of the doctrine is that a potential defendant must have some notice or 'fair warning' that the conduct contemplated is forbidden by the criminal law." *United States v. Protex Indus., Inc.*, 874 F.2d 740, 743 (10th Cir. 1989) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk. Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.")

Section 101(B)(6) of the City of Tulsa's municipal code contains a prohibition on the following:

> Weeds and other rank growths of vegetation upon private property or adjoining parking, including but not limited to poison ivy, poison oak or poison sumac and all vegetation at any state of maturity which . . . Exceeds twelve (12) inches in height, except healthy trees, shrubs or produce for human consumption grown in a tended and cultivated garden unless such trees and shrubbery by their density or location constitute a detriment to the health, benefit and welfare of the public and

> community or a hazard to traffic or create a fire hazard to the property or otherwise interfere with the mowing of said weeds….

Morrison maintains that the terms "healthy trees and shrubs" and "tended and cultivated garden" found in § 101(B)(6) are "not in the common parlance, nor Webster's, and are thus unconstitutionally vague," rendering the ordinance unenforceable.[4] (Doc. 20, at 3-4).

The Court finds that the Tulsa ordinance at issue – § 101(B)(6) – and the terms Morrison criticizes as vague, are sufficiently clear to have given Morrison fair warning of the specific yard conditions deemed unlawful by the City. Moreover, Morrison had actual notice that her yard was in violation of the ordinance as a result of the written notices defendants posted on her property. The notices detailed precisely what needed to be done to remediate the property and prevent the City's intervention. Morrison's mere disagreement with the defendants' interpretation of the ordinance does not render it vague. The key inquiry in a void-for-vagueness challenge is whether the plaintiff had adequate notice that his or her conduct was in violation of the statute at issue. *See Maynard*, 486 U.S. at 361. A reasonable person in Morrison's situation would have known that the City considered her property to be in violation of § 101(B)(6). Accordingly, § 101(B)(6) is not unconstitutionally vague as applied to Morrison.

### B. Defendants' Request for Summary Judgment as to Plaintiff's Fourth Amendment Claim

Defendants' seek summary judgment with respect to plaintiff's § 1983 claim. In general, to state a claim for relief under § 1983, a plaintiff must plead facts to show four elements: "(1) a violation of rights protected by the federal Constitution or created by federal statute or

---

[4] The Court notes that, despite her assertion that the words "tended" and "cultivated" are not in "common parlance," plaintiff uses them in her complaint without any apparent difficulty in discerning their correct usage. On the first page of her complaint, Morrison states that plants were "maintained and cultivated in a personal garden" and at page 2, she claims that she was "maintaining a well-tended garden…." (Doc. 2, at 1-2).

7

regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005); *Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002).

Plaintiff contends that her Fourth Amendment rights were violated when defendants searched her property and seized certain property during the nuisance abatement. Defendants argue that Tenth Circuit precedent mandates summary judgment in their favor with respect to Morrison's Fourth Amendment claim. Morrison counters that there are disputes of material fact which make summary judgment inappropriate. For the reasons stated below, the Court finds that summary judgment should be granted in defendants' favor.

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. "[R]easonableness," rather than a warrant, "is still the ultimate standard under the Fourth Amendment," and its determination will reflect a "careful balancing of governmental and private interests." *Soldal v. Cook County*, 506 U.S. 56, 71 (1992) (quotation omitted). In recent years, the Tenth Circuit has twice addressed the Fourth Amendment standards governing nuisance abatements, and in each instance it was the City of Tulsa's actions which were analyzed. In *Santana v. City of Tulsa*, 359 F.3d 1241 (10th Cir. 2004), the court held that, "as long as procedural due process standards are met and no unreasonable municipal actions are shown, a nuisance abatement action does not violate the Fourth Amendment." *Id*. at 1245. The Tenth Circuit reaffirmed this principle in *Edmundson v. City of Tulsa*, 152 F. App'x 694 (10th Cir. 2005). In *Edmundson*, the court cited *Santana* with approval, and held that the City of Tulsa had not violated Edmundson's Fourth Amendment rights during the City's abatement of his property because the City provided procedural due

process and did not act unreasonably in the abatement process. *Id*. at 698. The *Edmundson* court also found that the City of Tulsa's appeal process for nuisance abatement notices satisfied procedural due process standards. *Id*. at 697-98.

Upon consideration of the parties' briefing, evidentiary submissions, and the authorities cited above, it is apparent that Morrison's Fourth Amendment rights were not violated. The conditions on Morrison's property which the City sought to abate were plainly visible to the public. In addition, it is undisputed that (i) notice was posted on Morrison's property and mailed to her; (ii) the notice provided that Morrison had ten (10) days to file a written appeal; (iii) a final inspection notice was posted on her property; (iv) the defendants' obtained the assistance of a horticulturist to determine whether Morrison was maintaining a legitimate garden; and (v) Morrison had several conversations with defendants, including meetings at City Hall and an approximately four hour meeting at her home, regarding the condition of the property, but did not file a written appeal. The defendants acted in accordance with the City's established procedure for providing notice of a nuisance and an opportunity to be heard – a procedure the Tenth Circuit has embraced as consistent with due process standards. *See Edmundson*, 152 F. App'x at 697-98. Morrison's decision not to engage in that procedure does not render the defendants' actions unreasonable. To the contrary, an examination of the record reveals that the defendants did not act unreasonably in their abatement of Morrison's property. The City went to great lengths to explain to Morrison what conditions needed to be remediated and repeatedly attempted to reach a resolution before taking action with respect to the property. Accordingly, there was no deprivation of Morrison's Fourth Amendment rights.

Furthermore, even if Morrison could demonstrate that an unreasonable search or seizure occurred under the Fourth Amendment (which she hasn't), Mudoga and Cox would enjoy

9

qualified immunity so long as they could have reasonably believed that their behavior did not violate a constitutional right. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Viewing the facts in the light most favorable to Morrison, there is no evidence that Mudoga or Cox "knowingly violate[d]" Morrison's rights. The record indicates that defendants reasonably believed themselves to be acting in accordance with the law during the abatement. In addition, there is no clear precedent which would establish the defendants' actions as unlawful. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### C. The Fictitious Defendants

The Federal Rules provide that, "[i]n the complaint, the title of the action shall include the names of all the parties...." Fed. R. Civ. P. 10(a). There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984); *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982). John Doe and Richard Roe – who are fictitious individuals – are listed as defendants in Morrison's complaint. (Doc. 2). They have not been served in this action, nor were summonses ever issued in their names. Morrison has had ample time to seek to amend her complaint to add the identity of any other defendants against whom she has claims. She has not done so. Defendants John Doe and Richard Roe are hereby dismissed from this action, as anonymous parties are not permitted by the Federal Rules.

**IT THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. 15) is **granted**. Plaintiff's motion for partial summary judgment (Doc. 20) is **denied**.

**IT IS FURTHER ORDERED** that fictitious defendants John Doe and Richard Roe are **dismissed** from this lawsuit.

**IT IS SO ORDERED** this 1st day of March, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE